UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| | ) | |
| v. | ) | Case No. 05-Cr-0060 (S-8)(NGG) |
| | ) | |
| | ) | ECF Case |
| VINCENT BASCIANO, et al. | ) | |
| | ) | **Hearing Requested** |

**DEFENDANT MICHAEL MANCUSO'S MEMORANDUM OF LAW
IN OPPOSITION TO GOVERNMENT'S MOTION TO EMPANEL
AN ANONYMOUS AND PARTIALLY SEQUESTERED JURY**

April 21, 2008

David I. Schoen (DS0860)
Attorney at Law
2800 Zelda Road, Suite 100-6
Montgomery, Alabama 36106
334-395-6611
Fax: 917-591-7586
DSchoen593@aol.com

John W. Mitchell, Esquire (8382)
30 Broad Street, 27th Floor
New York, New York 10004
212-696-9500
Jwmlaw@cs.com

Attorneys for Michael Mancuso

## TABLE OF CONTENTS

**INTRODUCTION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  **1**

**A DISCUSSION OF THE LEGAL FRAMEWORK** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  **4**

**THE GOVERNMENT'S "FIVE FACTORS" TEST** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  **12**

**A POINT BY POINT CONSIDERATION OF THE GOVERNMENT'S MOTION** . . . . . . . .  **16**

**THE GOVERNMENT'S OUTRAGEOUS AND DISHONEST NEW CLAIM
ABOUT THE PIZZOLO MURDER** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  **17**

**CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  **25**

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| | ) | |
| v. | ) | Case No. 05-Cr-0060 (S-8)(NGG) |
| | ) | |
| | ) | ECF Case |
| VINCENT BASCIANO, et al. | ) | |
| | ) | **Hearing Requested** |

**DEFENDANT MICHAEL MANCUSO'S MEMORANDUM OF LAW
IN OPPOSITION TO GOVERNMENT'S MOTION TO EMPANEL
AN ANONYMOUS AND PARTIALLY SEQUESTERED JURY**

**INTRODUCTION**

On March 19, 2008, the government filed a motion asking this Court to empanel an anonymous and partially sequestered jury for the trial of this case. The Defendant, Michael Mancuso, by and through the undersigned counsel, now files this opposition to the government's motion.[1]

For the reasons set forth below, Mr. Mancuso respectfully submits that there is absolutely no legitimate basis for the use of an anonymous jury in this case on the facts of this case applied to the appropriate legal framework.[2] Specifically, there is no evidence that an anonymous jury is "genuinely called for" here, nor is there any evidence to support any reason to believe, let along a sufficiently "strong reason to believe" that the trial jury in this case would need protection. If those terms, as used in the relevant case law, are to have any meaning, the government's motion must be denied in this case.

---

[1] Counsel for Defendants Donato, Indelicato, and Aiello advise that their clients join in this opposition to the government's motion. They can and will provide relevant facts related to their clients in respect to this motion at oral argument and may make additional or different arguments in opposition to the motion at that time.

[2] The defendants object both to an anonymous jury and to a partially sequestered jury as the government has described those terms in its motion. For shorthand purposes here, I will refer to the anonymous jury; but I intend for the arguments to apply to both proposed conditions.

Any fair balancing of the purported reasons for an anonymous jury against the Defendant's right to the presumption of innocence, to full, fair, and effective jury selection, to a jury free from fear and suspicion and other fundamentally important constitutional rights unquestionably implicated by the empaneling of an anonymous jury must come out against the use of that "drastic measure" in this case.

This Court and others around the country have found that, while there is a strong general presumption and preference for a non-anonymous jury, an anonymous jury has its place as an exceptional measure to be used in exceptional circumstances, within the framework established for evaluating the matter and when it is properly used after "careful judicial scrutiny and with special care and precautions after determining that such circumstances exist. This is not the case for it.

Mr. Mancuso respectfully submits that the use of an anonymous jury in this case would violate, *inter alia*, his constitutionally protected rights under the Fifth and Sixth Amendments to the United States Constitution to Due Process of Law, to a fair, open, and public jury trial with a fair and impartial jury, to the effective assistance of counsel with respect to jury selection and at trial before a jury so selected, to the presumption of innocence, and under the Fair Cross Section and Equal Protection Clauses, based on the resulting handicap in exercising challenges on less than full information and the increased likelihood of having jurors struck for impermissible reasons, given the lack of important information provided under the scheme proposed by the government.[3]

Naturally, all of these rights potentially are impacted whenever an anonymous jury is impaneled and since the courts have found the practice permissible when genuinely called for on a sufficient evidentiary showing, it is always a matter of balancing. Here, on the evidence, the impact can and should be avoided altogether and no balancing should be required because there is no real evidence

---

[3] Mr. Mancuso raises these claims on his own behalf and he raises claims in opposition to the motion, to the extent applicable, on behalf of prospective jurors, the press, and the public.

establishing a genuine need for an anonymous jury.

The government has simply recycled and reformulated arguments advanced in virtually every case in this district of an alleged organized-crime nature, struggling without hesitation, to twist facts to squeeze them into a framework that has been successful for the government.  The effect of the government's campaign of pushing for an anonymous jury in each such case has been a routinization of a practice which was conceived as a most "drastic measure," a "disfavored exception to the presumption of openness in judicial proceedings."

The government's efforts to secure an anonymous jury for Mr. Mancuso, epitomizes the government's willingness to advance specious and intellectually dishonest arguments on the "facts" to try and make the case fit within the parameters of the decisions within this Circuit that have approved the use of an anonymous jury.  From the prominent examples of its conduct regarding the Cicale phony murder plot, its overuse and misuse of *ex parte* sealed filings, notwithstanding directions from the Court against such filings, and now with the irresponsible perversion of "facts" presented in its anonymous jury motion, it would seem that the government's appetite for unfair advantage is insatiable.

We are aware that Your Honor has approved the use of an anonymous jury in past cases; but we also know that Your Honor has recognized that it is a drastic and exceptional measure not to be used routinely and that it presents dramatic risks to the defendant's Constitutional rights.  Your Honor quite clearly and appropriately has recognized further that it is a matter which requires a careful case-by-case evaluation.  That is what we ask here.

We believe it fair to say that Your Honor never before has been asked to approve the use of an anonymous jury on the facts that apply to Mr. Mancuso and the case the government has against him here.  A fair and careful consideration of the relevant legally cognizable factors for determining whether an anonymous jury should be approved on the operative facts here must lead to its rejection.

Boiled down to its essence, the government's position, much as they have tried through specious arguments and the perversion of facts to package it differently, is that this is an organized-crime case and so the government wants an anonymous jury and all the mileage it can get in the jurors' minds and by limiting the defendants' knowledge and ability to fully and fairly examine prospective jurors. This Court has recognized, as the Second Circuit wrote, that organized-crime membership or connections do provide a sufficient basis for an anonymous jury.

In the event that, notwithstanding our opposition to the anonymous jury motion, the Court decides to grant the government's motion, the Defendants reserve the right to propose certain precautions for the process, including some alternative explanation instructions and an alternative with respect to the selection/identification of alternate jurors; but we would do so, of course, without in any way waiving our opposition altogether to the empaneling of an anonymous, partially sequestered jury.

### A Discussion of the Legal Framework

**"The case against juror anonymity is compelling and implicates the highest values and traditions of the American justice system."** Abraham Abramovsky and Jonathan I. Edelstein, *Anonymous Juries:  In Exigent Circumstances Only*, 13 St. John's J.L. Comm.457, 465 (Spring 1999).[4]

---

[4] I commend the article by Professor Abraham Abramovsky Mr. Edelstein for a full, thoughtful and thorough analysis of the dangers of using anonymous juries. At pages 468-472, they discuss the powerful deleterious effect that anonymous juries have on the defendant's right to the presumption of innocence. At pages 472-476 they discuss the negative effects of anonymous juries on the important interest of judicial integrity, and at pages 476-481, the authors discuss the impact anonymous juries have on the defendant's ability to fully investigate jurors for possible bias or interest and the similar effect it has necessarily on limiting voir dire as well as an independent investigation. In this last section, the authors specifically take issue with the claim that the pedigree information withheld through anonymity is meaningless as the government contends here at page 17 of its Motion. See also, *United States v. Scarfo*, 850 F.2d 1015, 1023 (3d Cir. 1988)(use of an anonymous jury limits what can be learned through voir dire and investigated). Finally, the authors conclude that curative instructions fail to prevent the prejudice they seek to prevent and further conclude that generally in such cases the government's argument and characterizations of the defendant further enhances and increases the dramatic stigma already in the juror's minds from the imposition of anonymity on them.

**"Anonymous juries are a drastic and disfavored exception to the presumption of openness in judicial proceedings."** Babak A. Rastgoufard, *Note, Pay Attention To That Green Curtain: Anonymity And The Courts*, 53 Case W Res. 1009 (Summer 2003).

**"Democracies die behind closed doors."** *Detroit Free Press v. Ashcroft*, 303 F.3d 681, 683 (6th Cir. 2002).

**"One of the demands of a democratic society is that the public should know what goes on in courts by being told by the press what happens there, to the end that the public may judge whether or system of criminal justice is fair and right."** *Maryland v. Baltimore Radio Show, Inc., et al.*, 338 U.S. 912 (1950) (Frankfurter, J. regarding the denial of *certiorari*)

**"Unquestionably, the empanelment of anonymous jury is a drastic measure, one which should be undertaken only in limited and carefully delineated circumstances.  An anonymous jury raises the specter that the defendant is a dangerous person from whom the jurors must be protected, thereby implicating the defendant's Constitutional right to a presumption of innocence… (the) Constitutional right to a presumption of innocence … (the) enforcement (of which) lies at the foundation of the administration of our criminal law."** *United States v. Ross*, 33 F.3d 1507, 1519 (11th Cir. 1994) (Hon. Frank Johnson, J.)[Emphasis added in all quotations above]

This Court well knows the parameters for considering an anonymous jury motion and we need not burden the Court unnecessarily with a detailed discussion of the same here.  As the Court is aware, the idea of an anonymous jury was developed in this Circuit more than 30 years ago.  It is not our purpose here to try to convince the Court that its use is a bad idea altogether, much as that might be our view.  Rather, by discussing the relevant case law and the facts in this case, we hope to convince the Court why the empanelment of an anonymous jury in this case would be wrong.

The law in this Circuit, as reflected in all of the decisions discussed below is that an anonymous

jury may be empaneled when genuinely called for based on evidence which establishes a strong reason to believe that the jury needs protection and when properly used.  The government bears a strong burden in proving through real evidence and not speculation or unsupported claims that there is a "strong reason to believe the jury needs protection" as a threshold matter.  *United States v. Paccione*, 949 F. 2d 1183, 1192 (2d Cir. 1991).

While it is true that many courts have approved of the use of an anonymous jury where the government's strong burden has been met through a real showing based on real evidence, even those courts have recognized that fundamentally important constitutional rights are implicated and put at risk by the use of an anonymous jury, including, but not limited to, the right to the presumption of innocents, long a hallmark of the American justice system, as well as the right to make intelligent and knowing jury challenges and the right to the effective assistance of counsel injury selection.  See e.g. *Paccione* at 1192; *United States v. Thomas*, 757 F. 2d 1359, 1363 (2d Cir 1985).

Each of the cases upon which the government relies for its motion is fully distinguishable on the facts from the instant case.[5]

In *United States v. Paccione*, 949 F.2d 1183 (2d Cir. 1991), for example, the Court reiterated the "strong reason" standard and emphasized that the use of an anonymous jury must not be made a routine.  Unlike our case, however, the case included an allegation of a threat to a government witness directly regarding his prospective trial testimony.[6]

_____

[5] Not one of the government's purported "facts" in its motion in the instant case is supported by any accompanying affidavit or other actual evidence.  Rather, the government's claims are based on unsupported allegations alone and, in the case of the allegations which the government claims supports the motion as to Mr. Mancuso, the key "fact" asserted by the government on which it asks this Court to rely is completely at odds with the actual evidence that the government has put forward on this same issue in at least two trials and in other submissions.

[6] In contrast in our case, we just have the government witness concocting false threats against himself and trying to frame a defendant for them.  Although, given the government facility in

In *United States v. Gotti,* 459 F.3d 296 (2d Cir. 2006) the government found that an anonymous jury was appropriate, based on specific factual assertions set forth by way of affidavit in support of the motion (as is the case in virtually every other government submission in connection with a request for an anonymous jury). But the primary "strong reason" to believe the jury needed protection was the key fact that the indictment in the case charged witness tampering and Grand Jury obstruction, factors which courts in this district have held to be crucially important to the question. *Id*. at 346.

Similarly in *United States v. Quinones*, 511 F.3d 289 (2d Cir. 2007), the Court emphasized at 295 that an anonymous jury is to be used only when "genuinely called for" and when there is "evidence" (not speculation or unsupported allegation) that there is "strong reason" to believe the jury needs protection. In *Quinones,* in sharp contrast to the instant case, the charges in the case included murdering cooperating witnesses and witness tampering. The Court in *Quinones* left open the question of whether the seriousness of the crime and pretrial publicity alone would be enough to support an anonymous jury, while noting that an organized crime connection and the prospect of a lengthy prison term would not be enough. *Quinones*, 511 F.3d at 296.

In *United States v. Vario*, 943 F.2d 236 (2d Cir. 1991), the defendant in *Vario* raised objections under due process fair trial grounds and the right to an impartial jury, as well as the denial of the presumption of innocence and effective use of peremptory challenges to the jury.

On review, the court of appeals ultimately upheld the lower court's use of an anonymous jury; however, as we see in some of the other cases, the court of appeals rejected some of the reasons used

changing facts and theories virtually overnight, we might well expect to now see the government adopt Cicale's position and claim that Messrs Basciano and Santomaggio actually did plan to kill Cicale in order to obstruct justice and that this provides one more argument in favor of an anonymous jury. Next, we would expect to see an affidavit from the case agent both attesting to that and to the government's new claim that Pizzolo was actually killed because of suspicions that he was a "rat" and not for the reasons put forward by Cicale in his debriefings and at two trials and/or for the same reasons discussed at length between Massino and Basciano on tape.

by the lower court.  Primary among the reasons the court of appeals rejected, was the lower court's finding that the defendant's alleged membership in an organized crime family was an element which supported the use of an anonymous jury.  The court of appeals expressly noted that the lower court's reference to the defendant's organized crime ties and membership and to actions in other organized crime cases which involved alleged jury tampering were inappropriate considerations and that if these alone were the only bases from the record for supporting the use of an anonymous jury, the use of an anonymous jury would have been reversible error in the case.  *Id* at 240.

However, the court found, again as many other courts have found that the crucial factor supporting the use of an anonymous jury was that the case had an obstruction charge in it.

The court went on to note that the "something more" that is required, beyond organized crime connections should focus on whether there is a demonstrated history or likelihood, based on real evidence, of obstruction of justice in the case or whether the trial evidence will depict such a "pattern of violence by the defendant and his associates such as would cause a juror reasonable fear for his own safety."  *Id* at 241.[7]

There is no such evidence in this case and there is no basis in this case for the evidence to raise any personal fear for any jurors' own safety.  Rather, it would be the imposition of the conditions, including anonymity and partial sequestration) that would, if anything, raise the jurors' fear for their personal safety because of the stigma attached to such conditions for any thinking juror.  *See* Abramovsky article, *Supra*. at 474.  The *Vario* court made it clear at 241 that it was error for the lower court to generally refer to organized crime connections.  Rather, the court's inquiry must focus on

---

[7] *See* Abramovsky and Edelstein, *Supra*. at 464: "Although the Second Circuit has held that 'the invocation of the words 'organized crime,' 'mob,' or 'mafia' without something more, does not warrant an anonymous jury' the federal courts have in practice concluded that "something more" is present in virtually every organized crime case."

whether there is evidence directly relevant to the question of juror fears or safety "in the trial at hand."

In *United States v. Thai*, 29 F.3d 785 (2d Cir. 1994), a case involving one of the most violent gangs to have plagued the streets of New York, the Court upheld the use of an anonymous jury. The case presented the paradigm for the use of an anonymous jury if one accepts the idea that the same ever is appropriate. There was direct evidence at trial of the defendant's long and broad pattern of intimidation toward crime victims, their attempts to kill some of them, and their murder of at least one because he participated in the judicial process and refused to withdraw his complaint to the police against the defendants. The court, specifically found that the defendants engaged in killing which demonstrated their willingness to undermine or subvert the judicial process.[8]

Notably absent from the government's papers which purport to inform the court of the law regarding the propriety of empowering an anonymous and partially sequestered jury are those cases from within this very Circuit in which courts have rejected just such a motion by the government in

---

[8] The decision by Your Honor to grant anonymous juries in two recent cases also can be distinguished from the instant case. In *United States v. Basciano*, 03-Cr.-929 (NGG) (Order of November 17, 2005) the Court found that the defendants to be tried had allegations against them in that case regarding the attempted murder of certain people pursuant to an alleged attempt to interfere with the government's investigation of that murder. The Court also noted that one of the defendants allegedly had sought permission to murder the family members of cooperating witnesses. Together, the Court found these allegations as to those defendants to point to a "willingness to interfere with the judicial process," perhaps the most "crucial" factor to be considered in analyzing a request for an anonymous jury. Similarly, in approving the empanelment of an anonymous jury in *United States v. Urso*, 03-Cr.-1382 (NGG) (Order of May 5, 2006), Your Honor found on page 3 of the Order that there were specific allegations in the case itself as to the defendants to be tried which specifically charged violent crimes intended to interfere with the judicial process which constituted "evidence" which pointed to willingness to interfere to interfere with the judicial process." Certainly no such allegations or facts are present nor could they be present as to Mr. Mancuso in this case. Here as to this defendant, there is no "history of obstruction of justice"; nor will the trial evidence in this case depict such a "pattern of violence" that could or would "cause a juror to reasonably fear for his or her own safety." There also is no legitimate concern in this case that "media attention may jeopardize the jurors' privacy" and, even if there were, there certainly are recognized measures available to limit the press' access to the information which the government seeks to conceal from the defendants in this case.

well-reasoned decisions.  See, e.g. *United States v. Gambino*, 818 F. Supp. 536 (E.D.N.Y. 1993);

*United States v. Millan-Colon*, 834 F. Supp. 78 (S.D.N.Y. 1993) (Kram, J.) (anonymous jury motion

rejected in case involving major heroin ring with violence and threats of violence, with Vincent

Basciano as a defendant); *United States v. Corrao*, 1998 U. S. Dist. LEXIS 2932 (S.D.N.Y., April 11,

1988); *United States v. Coonan*, 664 F. Supp. 861 (S.D.N.Y. 1987) (violent Westies case involving

murders of witnesses and other violent crimes); *United States v. Vasta*, 86 Cr. 60 (RLC) (S.D.N.Y.);

*United States v. Rastelli*, 85 Cr. 354 (CPS) (E.D.N.Y.); *United States v. Rotundo*, 84 Cr. 479 (LBS)

(S.D.N.Y.); *United States v. Santoro*, 85 Cr. 100 (Mishler, J.) (E.D.N.Y.); *United States v. Tufaro*, 82

Cr. 828 (wk) (S.D.N.Y.); *United States v. Burke*, 81 Cr. 439 (Bramwell, J.) (E.D.N.Y.).[9]  The cases

omitted by the government make a number of important points.

      In *United States v. Coonan*, 664 F. Supp. 861 (S.D.N.Y. 1987) the court had before a request by

the government for an anonymous jury in the trial of the leaders of the "Westies" gang known for its

violent racketeering enterprise and its case attracted huge media coverage.  However, the Court was

able to focus on the actual elements appropriate for consideration in connection with a request for an

anonymous jury and found that, as violent as the group appeared to be, there had been no evidence of

jury tampering by any of the defendants in the past and, as the court noted, the claims the government

was using to justify the use of an anonymous jury simply looked like claims like those made in the

charges made in the indictment.  These included allegations that the defendant tried to locate and kill

two government witnesses who he believed had provided information to the government in connection

with the indictment against the group.  The court did not consider those allegations as justifying an

---

      [9]  Unfortunately, the failure to cite contrary authority appears to be consistent with the
pattern of conduct and sense of fairness we see have seen in this case, corresponding in kind to
the government's view of its disclosure obligations with respect to the Cicale phony murder issue
which goes to the very heart of the integrity of its case.

anonymous jury, for they did not in any way suggest conduct aimed at the judicial process as that concept is intended under the criteria for consideration of an anonymous jury.

Specifically, the court in *Coonan* rejected the government's attempt to make arguments on the third and fourth element are similar to the arguments made by the government here.  Again, the Coonan Court referred to the use of an anonymous jury as a practice which "burdens" the presumption of innocence.  *Id.* at 862.

In *United States v. Millan-Colon,* 834 F. Supp. 78 (S.D.N.Y. 1993) the Court noted, once again, that the government must show a "strong reason" based on evidence to believe that juror protection is needed and before it should be required through an anonymous jury.  The Court also reaffirmed the well-settled principle that ordering anonymous jury impacts directly on the presumption of innocence and requires "close judicial scrutiny."

The Court in *Millan-Colon* engaged in a careful and thorough analysis of each requisite consideration for the determination of whether an anonymous jury is required.  It did so methodically and step by step on evidence that is far worse and more compelling on each element than anything the government has asserted in the instant case.  The Court acknowledged the overwhelming allegations of major narcotics trafficking, intimidation, violence, and even past tampering with the judicial process.  However, it focused on the specific elements appropriate for consideration of this specific question, rather than on generalities which the government offered to try to influence the Court, including a reference to alleged organized crime connections for Vincent Basciano.

On this issue, the Court, relying on the decisions in *Vario* and *Paccione*, rejected the assertion and noted that a relevant authority requires showing the "direct relevance" between alleged organized crime connections and juror fears for safety in the case at issue.  It rejected the government's motion for an anonymous jury in what is perhaps the largest heroine case tried in the southern district of

New York for many years, if not ever.

In *United States v. Gambino*, 818 F. Supp. 536 (E.D.N.Y. 1993) (Glasser, J.) the Court also rejected the government's motion for an anonymous jury in a case involving well-known reputed organized crime figures.  Judge Glasser wrote that whether defendants are charged with jury tampering or with obstruction of justice "has always been a crucial factor in deciding whether an anonymous jury should be selected."  Of course, in the instant case, there is no such allegation in either the past or the present as to Mr. Mancuso.

Again, Judge Glasser weeded through all of the government's specious claims and concluded that at the end of the day the government simply wanted an anonymous jury and urged the Court to grant one because the case involved reputed organized crime figures and this, Judge Glasser correctly noted, is not permissible.  Judge Glasser focused on the defendants before him at the bar and he found that there was no evidence of obstruction, intimidation or tampering by these defendants.  Specifically he wrote that it simply is not relevant that others in the same alleged organized crime family may have engaged in such conduct.  On the government's admission, the balance clearly favored upholding the presumption of innocence over the effect it unquestionably would suffer by impaneling an anonymous jury.  *See also*, See *Commonwealth v. Angiulo*, 615 N.E.2d 155, 170-72 (Mass. 1993) (reversing conviction by anonymous jury where a trial court failed to properly consider the impact an anonymous jury would have on the defendant's Constitutionally protected presumption of innocence).

### The Government's "Five Factors" Test

On page 10 of the government's motion, the government asserts that the "Second Circuit has identified five factors relevant to a court's determination as to the propriety of empaneling an anonymous jury…."  The government then lists the "five factors" which it contends the Second Circuit has identified and provides case citations for this group of "five factors."

With all due respect, the case citations on which the government relies do not support the government's contention that these are the appropriate five factors or that there is a group of "five factors" on which the Second Circuit has directed lower courts to focus; nor do the citations support the idea, implied with the list of these "five factors" that they are to be considered equally or exclusively.[10]

Indeed, as noted herein, one after another court in this Circuit has written that an overriding "crucial factor" is whether the **defendants** in "the case at hand" are charged, in the case at hand, with obstructing the judicial process or whether there is **evidence** that these same defendants have engaged in jury tampering or other relevant obstruction in the past and/or have demonstrated a willingness to interfere with the jury process. *See, United States v. Blackshear*, 2008 U.S. App. LEXIS 5623, *7 (2d Cir., March 17, 2008)*; United States v. Locascio*, 357 F. Supp. 2d 558, 561 (E.D.N.Y. 2005); *United States v. Gambino*, 818 F. Supp. 536, 540 (E.D.N.Y. 1993)(Glasser, J.); *United States v. Vario*, 943 F.2d 236, 239 (2d Cir. 1991).

---

[10]  I do not suggest that the "five factors" cited by the government bear no resemblance to factors considered appropriate for consideration.  Indeed, there are two courts in this district that I am aware of that have considered either these five factors or others very close to these.  They are not cases cited by the government in its motion for this proposition.  *See e.g. United States v. Gammarano*, 2007 U.S. Dist. LEXIS 52059, *17 (E.D.N.Y., July 18, 2007)(Johnson, J.); *United States v. Locascio*, 357 F. Supp. 2d 558, 560 (E.D.N.Y. 2005)(Amon, J.); *United States v. Cacace*, 321 F. Supp. 2d 532 (E.D.N.Y. 2004)(Johnson, J.).  The government attributes the decision in *Gammarano* elsewhere in its brief to Judge Sifton [Motion at 11]; but I assume this is just a typographical error, since one of the AUSAs who submitted the motion was the Assistant on that case.  Judge Johnson relied on his own decision in *Cacace* in citing these five factors in *Gammarano*, as did Judge Amon in *Locascio*.  Judge Amon noted that these five are "includ(ed)" among the factors to be considered, drawing on the decision in *Paccione* as well.  *Locascio*, 357 F. Supp. 2d at 560. The government's list of the "five factors" to be considered reflects the government's formulation of the inquiry as it would like it to be and as it has proposed it to other courts. *See e.g.*, *United States v. Millan-Colon*, 834 F. Supp. 783 (S.D.N.Y. 1993) (Listing six factors the government suggests the court should consider to determine whether there is a "strong reason" to believe that the jury needed protection and rejecting the government's motion for an anonymous jury).

One of the cases cited by the government in its motion at page 10 for the proposition that there are these "five factors" is *United States v. Paccione*, 949 F.2d 1183, 1192-93 (2d Cir. 1991). *Paccione* is a case which collects other cases on the subject of when the empanelment of an anonymous jury is appropriate and it lists several factors which have been found to be appropriate for consideration in connection with this inquiry.

The examples given by the *Paccione* Court by way of factors to be considered as reflected in other cases include where (1) "the defendants 'were alleged to be very dangerous individuals engaged in large-scale organized crime who had participated in several 'mob-style' killings;" (2) "**And** there was 'strong evidence of **defendants'** past attempts to interfere with the judicial process, and defendants were alleged to be part of a group that possessed the means to harm jurors;" (3) "Or where the **defendants** have been charged with grand jury tampering **and** the trial is expected to attract publicity." These factors certainly reflect a higher threshold than the government's characterization here.

Other examples given by the *Paccione* Court are similar to these three factors and also have the common thread of focusing on the conduct, either past conduct or charged conduct in the case of the defendant at hand and in the context of the trial for those defendants presently under consideration with respect to the use of the empanelment of an anonymous jury.

In contrast, the government in the case at bar, focuses a significant part of its motion on allegations of past conduct, some of which occurred more than 20 years ago and, of course, have nothing whatsoever to do with these defendants. This is exactly what Judge Glasser counseled against in his decision in *Gambino*, in which he rejected the government's request for an anonymous jury. *See United States v. Gambino*, 818 F. Supp. 536, 540 (E.D.N.Y. 1993)(Glasser, J.)[11]

---

[11] Judge Glasser's words in rejecting an anonymous jury in *Gambino* are worth repeating here:

It is clear that the Second Circuit does not consider there to be an accepted "five factors" test for evaluating whether "strong reason to believe a jury needs protection."[12] A most recent decision from the Second Circuit refers to three factors which it identifies as being "among" those which should be considered in this context. *See United States v. Blackshear*, 2008 U.S. App. LEXIS 5623, *7 (2d Cir., March 17, 2008) (Listing the three factors as "(1) the defendant's capacity to threaten jurors; (2) defendant's prior attempts to interfere with the judicial process; and (3) the likelihood of publicity.") Again, after listing these three factors, the *Blackshear* Court emphasized the centrality to the inquiry of the question of whether there is a "demonstrable history" or a demonstrated "likelihood" of obstruction of justice by the **defendant** against whom the charges in the case at issue have been brought, such that

---

"There is no evidence that these defendants either participated in or directed efforts to obstruct justice, tamper with juries or intimidate witnesses. **It is not enough that other members of the organized crime family with which they are allegedly aligned may have done so.**" *Gambino*, 818 F. Supp. at 540. [Emphasis added]

*See also Coonan*, 664, F. Supp. 861 (denying government motion for anonymous jury in the RICO trial of the ultra-violent "Westies" gang). (Judge Knapp found that although there were serious and substantiated accusations of widespread violence, including violence directed at witnesses, there was no evidence that the defendants had or would engage in interfering with a jury; therefore the government's anonymous jury motion was rejected).

At Page 14, n. 3 of its Motion, the government asserts that it makes no difference whether it is the defendants who actually engage or tampering or merely others involved with an organization of which defendants allegedly are aligned. It cites one case unpublished case from this district and a case from the Eleventh Circuit for this proposition. The government fails to mention that in the case from this district, *Gammarano*, it actually alleged personal involvement by the defendant (a claim which the court found to be rather dubious). It also is difficult to understand why Judge Glasser's decision in *Gambino* and Judge Knapp's decision in *Coonan* were was omitted entirely from the government's representation of the state of the law on this issue. They are right on point and directly contradict the government's assertion.

[12] Similarly, the cases cited at Page 10 of the government's brief purportedly in support of the assertion that "[I]n cases involving defendants with ties to organized crime where district courts have considered these five factors, the Second Circuit has repeatedly approved of the use of anonymous juries" do not, in truth, support the assertion at all and the decisions cited do not reflect the application of these "five factors," let alone the Second Circuit's "approv(al)" of their use.

that circumstance in and of itself would be enough to warrant an anonymous jury. Clearly there is no

such claim nor could there be in this case as to Mr. Mancuso based on his past or present conduct and

that is where the inquiry must focus as a matter of law.

### A Point by Point Consideration of the Government's Motion

From pages 1-6 of its motion, the government essentially recycles generalized arguments about

the purported virtues of an anonymous jury and the evil of the Bonanno organized crime family in an

effort to persuade the Court that, regardless of the actual facts and real evidence applicable to these

defendants, the Court should order an anonymous jury because it is an alleged organized crime case

and the government would like an anonymous jury for all of the benefit that it gets from the same and

for the advantage it gains over the defendants who indisputably have their fundamentally important

constitutional rights diminished as a result.

Of course, the government knows that it cannot ask the Court to impose an anonymous jury

solely on this basis, since courts everywhere have ruled out the invocation of "organized crime" as a

sufficient basis for empaneling an anonymous jury; but the government's agenda is clear and from that

point forward in its motion it either makes up or twists "facts" in order to give the Court what it hopes

will be "something more" on which to expressly base an order granting the government's motion.

To the extent the government asserts that Mr. Mancuso is the "acting boss" of the Bonanno

OCF, we of course dispute this assertion entirely and, perhaps more significantly for the Court, would

point out that the government's own witnesses have been all over the place as to what each contends

Mr. Mancuso's alleged position has been. Moreover, we would also point out here that Mr. Mancuso

is not even accused in the racketeering portion of the indictment and, indeed, that is a basis for the

severance which we have sought for him in this case.

To the extent the government asks the Court to rely on generalizations about supposed Bonanno

family history with respect to obstruction and danger, and violence, as it has asked the Court to do in each of the recent instances in which it has sought and obtained an anonymous jury, again we would point out that the Court must, as the caselaw provides, look to the evidence and the defendant in the case at hand and, of course, as noted, Mr. Mancuso is not even charged in the racketeering counts in this case nor has he any history of either violence, danger, or obstruction of any kind or confederation with any others who have been so involved, whether in the Bonanno family or otherwise.

As noted, there is absolutely no affirmation or other evidentiary support for any "factual" assertion in the government's motion papers.  We expect that with the reply, we will see an affirmation attesting to each fact asserted in the government's motion papers.  More likely, given the course of what we already have seen, perhaps the government can call on Cicale or another one of the witnesses in its stable of ready and willing cooperators to recall now and provide an affidavit that he had another private conversation in his car, during a chance meeting, and Mr. Mancuso told him that Pizzolo really was killed because of the suspicions the government now claims.

Much of what the government writes in its motion papers is, of course, simply gratuitously inflammatory and has no bearing on the issues before the Court.  Rather it purports to be counsel's rendition of how an organized crime family acts and what its strategy must be for future viability, none of which has anything to do with the judicial process or any impact on jurors in this case.  See, e.g. Motion at 5.  The motion continues with an expose of Bonanno family history, which the government would like the court to tie to the instant inquiry, reaching back more than 20 years for examples.

**The Government's Outrageous and Dishonest New Claim About the Pizzolo Murder**

Then, on page 7, the government, apparently recognizing that nothing it has written ought to have any bearing on the real issues, based on the applicable law, takes a leap to grab at something which it hopes will make a transition into the realm of relevance.  In doing so, it introduces a subject

-17-

about which here and, more significantly later in its papers, its submission is dishonest, intellectually and otherwise and shameless in the degree to which it reflects the government's willingness in this case to go to any depths to mislead the Court in order to gain an unfair advantage.  I will explain:

On page 7 of its motion, the government writes "In fact, Randolph Pizzolo, whose murder is charged in this case, was a suspected cooperating witness.  Specifically, during a consensually recorded conversation, Basciano stated that the defendant Michael Mancuso told Basciano that Pizzolo was a "rat."  It is bad enough that the government even raises this excerpt from the Massino/Basciano tapes in this or any other context, knowing full well everything else that those tapes and all other evidence in this case provides.  It is far worse and more outrageous that, after raising this subject, the government attempts to capitalize on its misleading efforts by arguing that this claim by Basciano (on the tapes made while he was being chastised by Massino for ordering the Pizzolo murder) about a conversation he purportedly had with Mr. Mancuso ought to be considered evidence of a willingness to obstruct in this case.  There are so many holes in the government's logic and spaces between its assertions and actual relevance that the assertion on its face is nonsense.  It is far worse because the government is well aware of just how dishonest this effort is.

It is likely, as a matter of first course, that the government knows, by now, that Mr. Mancuso never said any such thing to Mr. Basciano or anyone else about Mr. Pizzolo.  However, even giving the government the benefit of the doubt that it has some level of uncertainty as to whether that conversation ever took place[13].  A claim that Pizzolo was either suspected of being a "rat" or that he was killed for being a "rat" is inconsistent with the government's entire theory of the case as put forward through each and every witness who testified on the subject and with the 3500 material thus

---

[13] Although no citation is provided, the government apparently refers to a line which appears on page 21 of the January 3, 2005 tapes between Massino and Basciano.

far provided in the case and the government's theory of prosecution as reflected throughout two trials during which the Pizzolo murder was at issue.

Additionally, such a theory is even inconsistent with the government's own representations in these motion papers. For, the government claims in its papers that the Bonanno family has a full and clear record of killing "rats." (See e.g. Motion at 6). Yet, throughout the Massino/Basciano tape recorded conversations of January 3, 2005 and January 7, 2005, Massino, the longtime boss of the Bonanno family, according to the government, repeatedly and constantly chastises Basciano for supposedly ordering Pizzolo's murder simply because Pizzolo had been acting like a "jerk," bragging about his ability and exploits to the embarrassment and annoyance of others. If there were some suspicion that Pizzolo had been a "rat" then, according to the government's theory, Massino, not only would have welcomed the order to kill Pizzolo, he would have issued it himself and certainly would have supported it as the chief policymaker for the family. Further, Basciano would have known family policy, given the government's attribution of his role in things and he would have explained to Massino that, consistent with family policy, Pizzolo was killed because he was a "rat."

Obviously, that conversation never took place and would not make any sense given the entire balance of the many pages of transcript purporting to reflect their taped conversations. We need not engage in that kind of logical exercise, however, because we now have an abundant record of evidence, reflecting the government's "investigation" and theories regarding the Pizzolo murder from two full trials and nowhere in that record has it ever been the government's theory that anyone suspected Mr. Pizzolo of being a "rat" or that his murder had anything whatsoever to do with such a suspicion.

It is nothing short of unethical and dishonest to attempt to persuade this Court to empanel an anonymous jury in this case based on the claim that Mr. Mancuso or any other defendant in this case has engaged in or has indicated a willingness to engage in the obstruction of justice (here, by killing a

-19-

cooperating witness) by even suggesting that the murder of Randolph Pizzolo reflects such a history or willingness when the government well knows there is absolutely no truth to any such assertion.

Such an approach to gain an unfair advantage in this case is shameful and the Court should expressly address and sanction the government for this kind of conduct.  It has no place in this process.

Indeed, given the government's purported concern about unfair or significant media coverage which could interfere with the process, it is irresponsible, at best, for it to put such inflammatory allegations in its motion papers, openly filed in this case, knowing there to be no basis whatsoever for any argument in reliance on this claim.[14]

The entire premise behind the government's argument in any way trying to tie an obstruction claim to Mr. Mancuso is a false premise, must be rejected fully, and the very fact that the government would engage in such an attempt to color the Court's consideration of these very important issues which unquestionably impact on this defendant's fundamentally important constitutional rights, including his right to the presumption of innocence, should count against the government in any balancing in which this Court engages in this matter.

From pages 8 to 11 of its motion the government argues the benefits of an anonymous jury. The logical conclusion of the government's argument in this section, is that an anonymous jury is actually a preferred course, rather than, as the Courts actually have said, a "drastic measure" only reserved for exceptional cases in which there is evidence supporting a "strong reason" to believe that jurors in a particular case need protection.  The government's submission, if accepted, would lead only to the routinization of the practice and that certainly is not what the Courts or respected commentators

---

[14] If I were to cite to each place in the record in which the government advanced its theory that Pizzolo was killed simply because he was acting like a "jerk" and Mr. Basciano had decided to make an example of him to show others not to act this way, it would take up the remainder of space allotted to our opposition.  I will glad to provide the Court with any and all citations to the record on this subject which the Court wishes to see.  I trust the Court's own recollection of the evidence on this subject will make that unnecessary.

envision.  This is exactly the sort of snowball effect Judge Oakes presciently forecast in his powerful

dissent in *United States v. Barnes*, 604 F. 2d 121, 175 (2d Cir. 1979) (Oakes, J. Dissenting from Denial

of Rehearing on En banc) ("Judges in … are sure to follow its precedent as, to borrow a simile of Judge

Timbers, a flock of seagulls follows a lobster boat."); See *Abramovsky and Edelstein, Article:*

*Anonymous Juries:  In Exigent Circumstances Only,* 13 St. John's J.L. Comm. 457, 464 (Spring 1999).

      In this section of its motion, the government attempts to advise the Court on the structure of the

relevant inquiry concerning a request for an anonymous jury, as well as what it regards as the relevant

"five factors" for consideration on the question. [Motion at 9-11].  This is discussed above.  Without

accepting that these are the most relevant factors, Mr. Mancuso will address the substance provided for

each factor the government has listed in order to deal directly with them.

      The first "factor" the government discusses in substance is what it characterizes as the

"seriousness of the charges."  Its brief discussion on this "factor" is found at Page 13 of the Motion.

There it points out accurately that the defendants face potential sentences of life in prison for charges

that by any measure are, indeed serious.  Of course, of the "factors" listed, this is by far the least

significant one, only rarely mentioned as relevant to the question and it would not and could not be

considered dispositive of whether or not an anonymous jury should be empaneled.

      Next, the government addresses the second "factor" which it characterizes as "dangerousness of

the defendant." [Motion at 10].  This discussion is found at Pages 12-14 of the Motion.  Here, the

government again stoops to a real low, reflecting another inappropriate grasping at straws.  The

government's submission as to Mr. Mancuso on this issue is a cheap shot and is completely irrelevant

to the "factor" purportedly under discussion.

      On Page 13, of its motion, the government writes: "Moreover, certain defendants have a well-

documented history of violence."  It then reserves one sentence, among two pages of argument under

this "factor" to address Mr. Mancuso.  It writes, "Mancuso was convicted of and served a significant

jail sentence for killing his first wife."  Shame on the government once again![15]

    The government has characterized this second "factor" as the "dangerousness of the defendant."

[Motion at 10, listing "five factors"].  Does the government really think that for purposes of convincing

a court to impose the extraordinary or "drastic" measure of an anonymous jury, with the acknowledged

deleterious impact that carries with it for defendants' fundamentally important constitutional rights, it

is either persuasive or appropriate to rely on such a matter as evidence of the defendant's

"dangerousness" or a "well-documented history of violence?"  This is not at all what the courts have in

mind when considering a defendant's demonstrated dangerousness for purposes of determining

---

[15] Earlier in this case, the Court was apprised of the true facts concerning Mr. Mancuso's wife and the terrible accident that led to her death.  That was in response to the government's claim, for the benefit of the media, that Mr. Mancuso should be denied a furlough for his daughter's religious service because he had killed his first wife and therefore should be considered dangerous.  Unlike the government's completely unsupported submission on the "facts," Mr. Mancuso has a full documented record to support what we have told the Court (and the Department of Justice in connection with the death penalty review).  Unfortunately, because of this assertion here, I have to address it briefly once again.

    In 1986, 22 years ago, intoxicated from a night at a club, came home and got into an argument with his wife, Evalina.  While they argued he waved a gun in the air and the gun accidentally went off, shooting Evalina.  Distraught, he immediately drove her to the hospital, laid her on a gurney, and waited for a nurse to come.  He then panicked and left the hospital.  He was charged with his wife's death, of course, and pled guilty to manslaughter in the second degree.  He was sentenced to 4 1/2 to 9 years in prison, on recognition of the accidental nature of the entire incident.  We even provided the government with the sentencing minutes which show no dispute about the accidental nature of the matter.  It was a sad and tragic episode in Mr. Mancuso's life and he has lived with the guilt and the impact it has had on his wife's family and on their daughter for the past 22 years.  He has dealt with the matter within his family, with his daughter, and otherwise in a private matter since then and he has paid the penalty for what he did on one terrible intoxicated night.

    This is not the kind of matter at all that in any way bears on the issue before this Court and the government had no business interjecting it into the discussion.  As with the other "factors" it simply should have candidly advised the Court that it had no argument to make with respect to Mr. Mancuso and the appropriateness of an anonymous jury for him.  That would have been the truth; but the truth here was not expedient and expedience is the government's apparent priority.

whether a juror legitimately would or should fear for his or her safety.  Moreover, this is not a matter that would ever come to a juror's attention, let alone reflect a "pattern of violence" that could inculcate fear from seeing the same at trial.  The submission also rather undercuts the desired implication the government would like to have the Court draw from its bogus claim that Mr. Mancuso was the "acting boss" of the family; for after painting the dramatic picture of an evil and violent Bonanno "family" earlier in its papers, it is curious that the 53 year old person it labels (in conflict with the actual testimony of some of its witnesses) as the "acting boss," whose entire life has been open to scrutiny, has no actual history of violence.

The government next deviates from the express terms of its "five factors" test and gratuitously reports that the defendants are not only dangerous, but they also purportedly are sophisticated criminals facile with complicated means. [Motion at 13-14] Again, of course, no reference at all is made to Mr. Mancuso, for there is no such evidence and, again, the source for the representation is the often cited sourceless "information" the "government has received." [Motion at 14]

The government has nothing real to offer on either its third or fourth "factors" ((3) "the defendant's ability to interfere with the jury, either by himself or through a criminal organization of which he is a member;[16]" and (4)"previous attempts to interfere with the judicial process by the defendant or his associates") and so it suggests that the Court consider the two together - but zero plus zero still equals zero.  Here, the equation should result in a negative number, however, because of the dishonest approach the government has taken on this issue.

_____

[16]   The government, of necessity, ignores those decisions in which the courts have written perfectly clearly that the focus must be on actual evidence, related to the defendants at issue (and not to the actions of members of similar organizations of the organizations of which they allegedly are members) in framing this "factor" and related argument.  *See e.g. United States v. Gambino*, 818 F. Supp. at 540; *Vario*, *Supra*.

These two "factors" are, in one formulation or another, of course, the area which all courts have found to be the most "crucial" factor in the equation concerning whether to empanel an anonymous jury and the government has nothing whatsoever to offer on it as to Mr. Mancuso - at least nothing based on truth or actual facts or evidence.[17]  This discussion is found at Page 15 in one paragraph, perhaps representing the government's shame in even putting forward such an argument based on an entirely false premise.

The entire submission the government has to offer on these two most "crucial" factors concerning the appropriateness of an anonymous jury is the outrageously false claim that the Pizzolo murder, which the government now, for the first time, and notwithstanding two full trials and boxes of evidence to the contrary, all establishing a very different reason for his murder - put forward by the cooperating witness murder organizer (Cicale) himself and others - claims represents the murder of a "suspected government cooperator" to render him "unavailable," thereby evidencing actual interference in the very judicial process at bar.  If this were true, it would indeed be a most "crucial" factor for the Court to consider; but it is categorically false from the government's own expressed theory of the murder over and over again and presenting it otherwise here, because it is expedient to do so, knowing it is false and contrary to everything on the subject the government previously has put forward through papers and witnesses, is reprehensible!

The truth is, the government has no evidence whatsoever related to Mr. Mancuso which in any way supports its position on either "factor" 3 or 4 as it should have acknowledged.

Finally, the government addresses its fifth "factor,""the amount of media attention expected

---

[17]  More precisely the issue courts have found the most "crucial" is whether there is any claim of obstruction or interference with the judicial process in the case at bar; but courts certainly consider past conduct or other indicia of a willingness to obstruct the process as most important.

during the trial that might expose the jurors to extraordinary pressures that might impair their ability to be fair" at Pages 15-16 of its Motion.  It has no evidence at all to offer on this point and there is no merit to the argument.

If publicity is an issue about which the government has serious concerns, one course taken by several courts and suggested by some commentators would be to provide the court, the prosecution, the defendant, and defense counsel with all requested pedigree and other information regarding the jurors, but not releasing such information as the government seeks to protect to the media.  See, e.g. Report of the Judicial Conference Committee on the Operations of the Jury System on the "Free Press – Fair Trial Issue", 87 F.R.D. 518, 529 (1980).  This would be consistent with the well settled constitutional principle of using the least restrictive means when a fundamental constitutional right is implicated.  See e.g. *People v. Goodwin*, 69 Cal. Rptr. 2d 576, 579-80 (Cal.Ct.App. 1997); *Gannett, Inc. v. Delaware*, 571 A.2d 735 (Del. 1990); *See also*, N.Y. Crim Proc. 270.15(1-a)(providing for similar procedure by statute).[18]

**Conclusion**

For all of the foregoing reasons, the government's motion for an anonymous and partially sequestered jury must be denied.

---

[18]   Ironically, as Professor Abramovsky notes at Page 475 of his article on the use and misuse of anonymous juries, often it is the motion seeking an anonymous jury that garners the most publicity.  The government here has shown it is quite familiar and well-practiced with the notion of filing documents under seal when it serves its purpose to do so.  Yet it chose to openly file this motion with inflammatory and untrue assertions, while using a claimed concern about publicity as a primary justification for seeking an anonymous jury.  If that truly were a legitimate concern it certainly could have filed the motion under a protective order as it has sought without hesitation to do with respect to the most troubling developments concerning the witness Cicale's phony murder plot and other reported misconduct.  On the importance of the public's right to know what goes on in its courts, *see* Marci A. Hamilton and Clemens G. Kohnen, *Article:  The Jurisprudence Of Information Flow:  How The Constitution Constructs The Pathways Of Information*, 25 Cardozo L. Rev. 267, 292-295 (November 2003).  In any event, the Court has held that media coverage alone is not enough to justify an anonymous jury.  *United States v. Vario*, 943 F. 2d 236, 240 (2d Cir. 1991); *United States v. Lemrick Nelson*, 94 Cr. 823 (DLT) (E.D.N.Y.); *Quinones*, 511 F.3d at 296 (leaving the question open).

Respectfully submitted,

_____
/s/ David Schoen (DS-0860)

David I. Schoen (DS0860)
Attorney at Law
2800 Zelda Road, Suite 100-6
Montgomery, Alabama 36106
334-395-6611
Fax: 917-591-7586
DSchoen593@aol.com

John W. Mitchell, Esquire (8382)
30 Broad Street, 27th Floor
New York, New York 10004
212-696-9500
Jwmlaw@cs.com
Attorneys for Michael Mancuso

## CERTIFICATE OF SERVICE

I hereby certify that I have served a true and correct copy of the foregoing Memorandum of Law in Opposition to the government's Motion for an Anonymous and Partially Sequestered Jury on all counsel through the ECF system on this 22nd day of April, 2008 at or around 2:15 a.m.

_____
David I. Schoen (DS-0860)