JDB:JAG/TM/NMA
F.#2005R00060

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - X

| | |
|---|---|
| UNITED STATES OF AMERICA | S U P E R S E D I N G |
| - against - | I N F O R M A T I O N |
| MICHAEL MANCUSO,<br>    also known as "Michael<br>    the Nose," | Cr. No. 05-060 (S-10) (NGG)<br>(T. 18, U.S.C., §§ 1955,<br>1959(a)(5), 2 and 3551 <u>et<br>seq</u>.) |
| Defendant. | |

- - - - - - - - - - - - - - - - X

THE UNITED STATES ATTORNEY CHARGES:

INTRODUCTION TO ALL COUNTS

At all times relevant to this Superseding Information, unless otherwise indicated:

The Enterprise

1. The members and associates of the Bonanno organized crime family of La Cosa Nostra (the "Bonanno family") constituted an "enterprise," as defined in Title 18, United States Code, Sections 1961(4) and 1959(b)(2), that is, a group of individuals associated in fact that engaged in, and the activities of which affected, interstate and foreign commerce. The Bonanno family constituted an ongoing organization, whose members functioned as a continuing unit for a common purpose of achieving the objectives of the enterprise. The Bonanno family was an organized criminal group that operated in the Eastern

District of New York, other parts of the United States and Canada.

2. The Bonanno family operated through groups of individuals headed by "captains," who were also referred to as "skippers," "caporegimes" and "capodecinas." These groups, which were referred to as "crews," "regimes" and "decinas," consisted of "made" members of the Bonanno family, also referred to as "soldiers," "friends of ours," "good fellows" and "buttons," as well as associates of the Bonanno family.

3. Each captain was responsible for supervising the criminal activities of his crew and providing crew members and associates with support and protection. In return, the captain received a share of the earnings of each of the crew's members and associates.

4. Above the captains were the three highest-ranking members of the Bonanno family. The head of the Bonanno family was known as the "boss." He was assisted by an "underboss" and a counselor, who was known as the "consigliere." With the assistance of the underboss and consigliere, the boss was responsible for setting policy, resolving disputes between members and associates of the Bonanno family and members and associates of other criminal organizations, and approving all significant actions taken by members and associates of the Bonanno family, including murder.

2

5. The boss, underboss and consigliere of the Bonanno family, who were sometimes referred to collectively as the "administration," supervised, supported, protected and disciplined the captains, soldiers and associates and regularly received reports regarding the activities of the members and associates of the Bonanno family. In return for their supervision and protection, the boss, underboss and consigliere received part of the illegal earnings of each crew. When a member of the administration was unable to fulfill his criminal responsibilities because of incarceration, ill health or other reason, a member of the Bonanno family was often appointed to that position in an acting capacity.

6. The Bonanno family was part of a nationwide criminal organization known by various names, including the "mafia" and "La Cosa Nostra," which operated through entities known as "families." The ruling body of this nationwide organization was known as the "commission," the membership of which at various times has included the bosses of the five New York City-based families, to wit: the Bonanno, Colombo, Gambino, Genovese and Luchese organized crime families. For a period of time, the boss of the Bonanno family was removed from membership within the commission.

7. From time to time, the Bonanno family would propose a list of associates to be "made," that is, to become

3

members of the Bonanno family. The list would be circulated to the other families based in New York City.

### The Purposes, Methods and Means of the Enterprise

8. The principal purpose of the Bonanno family was to generate money for its members and associates. This purpose was implemented by members and associates of the Bonanno family through various criminal activities, including arson, credit card fraud, drug trafficking, extortion, kidnaping, illegal gambling, interstate transportation of stolen goods, loansharking, and robbery. The members and associates of the Bonanno family also furthered the enterprise's criminal activities by threatening economic injury and using and threatening to use physical violence, including murder.

9. Although the primary purpose of the Bonanno family was to generate money for its members and associates, the members and associates at times used the resources of the Bonanno family to settle personal grievances and vendettas. For those purposes, members and associates of the enterprise were asked and expected to carry out, among other crimes, acts of violence, including murder and assault.

10. The members and associates of the Bonanno family engaged in conduct designed to prevent government detection of their identities, their illegal activities and the location of proceeds of those activities. That conduct included a commitment

to murdering persons, particularly members or associates of organized crime families, who were perceived as potential witnesses against members and associates of the enterprise.

11.  Members and associates of the Bonanno family often coordinated street-level criminal activity, such as drug trafficking, illegal gambling, loansharking, extortion, and robbery, with members and associates of other organized crime families.

### The Defendant

12.  At various times, the defendant MICHAEL MANCUSO, also known as "Michael the Nose," was an acting boss, an acting underboss, a captain, a soldier and an associate within the Bonanno family.

### COUNT ONE
(Conspiracy to Commit Murder in Aid of Racketeering)

13.  The allegations contained in paragraphs 1 through 12 are realleged and incorporated as if fully set forth in this paragraph.

14.  The Bonanno family enterprise, through its members and associates, engaged in racketeering activity, as defined in Title 18, United States Code, Sections 1959(b)(1) and 1961(1), that is, acts involving murder, extortion and gambling that are chargeable under New York State Penal Law and punishable by imprisonment for more than one year, acts indictable under Title 18, United States Code, Sections 892, 893 and 894 (the

5

making, financing, and collecting of extortionate extensions of credit), acts indictable under Title 18, United States Code, Section 1951 (extortion), acts indictable under Title 18, United States Code, Section 1955 (gambling), and acts indictable under Title 21, United States Code, Sections 841 and 846 (narcotics trafficking).

15. On or about and between November 1, 2004 and November 30, 2004, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant MICHAEL MANCUSO, also known as "Michael the Nose," together with others, for the purpose of gaining entrance to and maintaining and increasing position in the Bonanno family, an enterprise engaged in racketeering activity, did knowingly and intentionally conspire to murder Randolph Pizzolo, also known as "Randy," in violation of New York Penal Law Sections 125.25(1) and 105.15.

(Title 18, United States Code, Sections 1959(a)(5) and 3551 et seq.)

## COUNT TWO
(Illegal Gambling - Bookmaking)

16. In or about and between January 2004 and January 2005, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant MICHAEL MANCUSO, also known as "Michael the Nose," together with others, did knowingly and intentionally conduct, finance, manage,

6

supervise, direct and own all or part of an illegal gambling business, to wit: a gambling business involving bookmaking, which operated in violation of the laws of New York State, to wit: New York Penal Law Sections 225.05, 225.10(1) and 20.00, which involved five or more people who conducted, financed, managed, supervised, directed and owned all or part of the business and which remained in substantially continuous operation for a period in excess of thirty days and had a gross revenue of at least $2,000 in any single day.

(Title 18, United States Code, Sections 1955, 2 and 3551 et seq.)

_____
BENTON J. CAMPBELL
UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK