```
                                                                1

 1                         UNITED STATES DISTRICT COURT
                           EASTERN DISTRICT OF NEW YORK
 2     - - - - - - - - - - - - - - - - -X

 3     UNITED STATES OF AMERICA,         :      Cr 05-060

 4                   v.                  :      U.S. Courthouse
                                                Brooklyn, New York
 5     MICHAEL MANCUSO,                  :
                                                December 16, 2008
 6                   Defendant.          :      2:20 p.m.

 7     - - - - - - - - - - - - - - - - -X

 8
                    TRANSCRIPT OF SENTENCE
 9            BEFORE THE HONORABLE NICHOLAS G. GARAUFIS
                   UNITED STATES DISTRICT JUDGE
10

11     APPEARANCES:

12     For the Government:         BENTON J. CAMPBELL
                                   United States Attorney
13                                 By:  JEFFREY GOLDBERG
                                   Assistant U.S. Attorney
14                                 271 Cadman Plaza East
                                   Brooklyn, New York 11201
15
       For the Defendant:          JOHN MITCHELL, ESQ.
16

17


18
       Court Reporter:             Burton H. Sulzer
19                                 225 Cadman Plaza East
                                   Brooklyn, New York 11201
20                                 (718) 613-2481
                                   Fax # (718) 613-2505
21


22

23     Proceedings recorded by mechanical stenography, transcript
       produced by CAT.
24

25             (Open court-case called.)
```

1      THE COURT:  I am going to start with Mr. Mancuso and
2 Mr. Aiello briefly and then I will do the sentencings.
3      I note for the record that Mr. Mancuso and  Mr.
4 Aiello are are present in the courtroom.  Counsel for Mr.
5 Mancuso.
6      MR. MITCHELL:   John Mitchell.
7      THE COURT:  Good afternoon, sir.
8      Counsel for Mr. Aiello.
9      MS. KELLMAN:  Susan Kellman.
10      THE COURT:  Miss Kellman, good afternoon.  All
11 right.  Preliminarily, I have a request for a member of Mr.
12 Pizzolo's family to speak to the court.
13      Is Connie Pizzolo here?
14      MR. GOLDBERG:  Yes, your Honor.
15      THE COURT:  State your name for the the record.
16      MS. PIZZOLO:  Connie Pizzolo.
17      THE COURT:  Please be seated.
18      Youmay proceed.
19      MS. PIZZOLO:  My name is Connie Pizzolo and we all
20 sit here today a child to someone, whether that someone be
21 your mother, your father, your adopted mother or adopted
22 father, you're someone's child.  You were born to someone and
23 my father was Randy Pizzolo.  I was his firstborn and today I
24 sit before you a fatherless woman and a mother of two
25 beautiful girls, two girls that will never have seen their

3

1  grandfather's smile, two girls that will never hear their
2  grandfather's jokes, sit on their grandfather's lap or feel
3  their grandfather's embrace because of two cowards that have
4  pled guilty to taking my father's life by way of murder.
5              On December 1st, 2004, my dad was found shot to
6  death on a street in Greenpoint Brooklyn.  He was 43-years-old
7  when he died.  These would worthless lives on command shot and
8  killed my father.  Whether one pulled the trigger and one
9  other stood by, whatever, it's all the same difference to me.
10             It's unfortunate that we can't control the choices
11 people make for their own lives, whether their choices are as
12 adults, parents or choices that our children make.
13             We do not choose who we're born to.  We are own
14 people, free to make each decision that we choose and these
15 despicable people chose not to be a part of society that is
16 free to make decisions on their own but to be followers
17 instead of leaders, and I will never forgive either of you for
18 taking my father's life.  That will be your guilt to burden.
19             You both need to life with the knowledge of knowing
20 you all took away the one and only person in this whole world
21 that actually loved me unconditionally, and that was my dad,
22 the one person I could talk freely with and receive advice
23 from as a father to a daughter, you took away the love of a
24 parent.
25             My dad meant the world to me and although he wasn't

1  perfect, he was perfectly and perfect to me.  His murder has
2  affected my life in every aspect possible.  You might ask how.
3  Not being able to pick up the phone and call him when
4  something's wrong or something is so well accomplished that a
5  dad's phone call is due, it really hurts.
6         Everywhere I go I'm reminded of my father.  I'm
7  haunted by our father/daughter moments and memories and I
8  wish, I wish you both are haunted by a ghost.  I can't spend
9  one week or a holiday without wishing my father was here
10 spending time, celebrating, drinking, cooking, feasting with
11 us, that's what hurts worse than any pain I've ever felt, and
12 you two are the reason for my pain, both of you -- and more, a
13 few more, but they'll get theirs in the end too.
14         Father's Day, what am an I celebrating?  My kids
15 celebrate their father but me I have no one.  I still
16 celebrate his memory but it's not the same.  Christmas,
17 Thanksgiving, Easter Holidays, period, my dad was like one of
18 my best friends and how he's gone.
19         The injuries my family and I have suffered are
20 emotional and have lasted every day of our lives.  I'm glad
21 the sentence wasn't up to me to decide because I would have
22 given you both life without parole, 24 hour lock down and
23 confined you both to a box with no visitation or communication
24 with the outside world.  This way you could both be alive but
25 dead.  People could talk about your memories and laugh at

1  holiday parties or whatever and remember what you said to them
2  but have no way to communicate with you.
3         In the end you'll meet your maker and I think with
4  souls that dirty you'll need to do a lot of praying for the
5  mercy of God.  In the Book of Revelation it says: "Let the
6  cowardly, the unbelieving, the vile, the murderers, the
7  sexually immoral and all the liars -- their place will be in
8  the fiery lake of the burning sulfur.  This is the second
9  death" that I wish onto you.
10         THE COURT:  All right.  At this time we will proceed
11 with the sentencing in United States of America against
12 Michael Mancuso and Mr. Aiello may be returned to the cell:
13         I direct that the court reporter to make Ms.
14 Pizzolo's statement a part of the record of both this
15 sentencing and the sentencing of Anthony Aiello.
16         All right.  Let me have appearances again.
17         MR. GOLDBERG: Jeff Goldberg for the government, good
18 afternoon.
19         MR. MITCHELL:   Good afternoon, Judge.  John
20 Mitchell for the defendant Michael Mancuso.
21         THE COURT:  Mr. Mancuso is present.  Good afternoon,
22 sir.
23         THE DEFENDANT:  Good afternoon.
24         THE COURT:  All right.  This is the sentencing for
25 Michael Mancuso.  Mr. Mancuso, are you satisfied with the

```
 1  assistance that your attorney has given you thus far in this
 2  matter?
 3              THE DEFENDANT:  Yes, your Honor.
 4              THE COURT:  Very well.  I have the following
 5  materials before me in the file and I've reviewed all of them.
 6  I have a presentence investigation report dated November 7,
 7  2008.
 8              Mr. Mitchell, have you seen that?
 9              MR. MITCHELL:  Yes, sir, I've seen it and I've
10  reviewed it with Mr. Mancuso, your Honor.
11              THE COURT:  All right.  I also have a letter dated
12  November 17, 2008, from Mr. Mitchell to the Probation
13  Department which was responded to by way of an addendum to the
14  presentence report dated December 12, 2008.
15              Have you seen the defense lawyer's letter?
16              MR. GOLDBERG:  I have.
17              THE COURT:  Have you both seen the response of the
18  probation officer?
19              MR. GOLDBERG:  Yes, your Honor.
20              MR. MITCHELL:  Yes, sir, I have.
21              THE COURT:  All right.  There is also a plea
22  agreement, which is Court's Exhibit No. 1, dated August 6,
23  2008, and you were all present at the time so you know what
24  that says.
25              Now, the defendant pleaded guilty to a two count
```

1  superseding information S-10.  Count one accused the defendant
2  of a conspiracy to murder Mr. Pizzolo and count two was a
3  gambling count; is that right?
4          MR. GOLDBERG:  Yes, your Honor.
5          THE COURT:  All right.  According to the presentence
6  report, the total offense level for this defendant is a 42.
7  The defendant is in criminal history category 3.  The range of
8  imprisonment is 360 months to life under the sentencing
9  guidelines, but the maximum sentence that the court can impose
10 due to the nature of the pleas is 15 years total.
11         Is that right?
12         MR. MITCHELL:  Yes, sir, that is my understanding.
13         MR. GOLDBERG:  Yes, your Honor.
14         THE COURT:  All right.  Does everyone agree on the
15 computation of the guideline?
16         MR. GOLDBERG:  Actually, our computation was
17 slightly different.  The end result was the same, which is 360
18 to life.  It's obviously not relevant that there was a minor
19 difference regarding the third acceptance point, but we don't
20 think it's important to argue it.  We consent to the PSR's
21 calculation.
22         MR. MITCHELL:  As we pointed out in our objection
23 letter your Honor, we disagreed with the calculation but once
24 again we don't deem it relevant because there is a statutory
25 maximum that limits the exposure in this case.

1      THE COURT:  All right.  So therefore there is
2  nothing for me he to rule on at this point?
3      MR. MITCHELL:   With regard to objections? .
4      THE COURT:  With regard to objections on the PSR.
5      MR. MITCHELL:   There are a few minor things.
6      THE COURT:  Let's go over them.
7      MR. MITCHELL:  In the addendum, if you would, sir
8  -- as a fundamental proposition, we will rely on our
9  objections.  We disagree with the Department of Probation's
10 addendum, but, specifically, the third paragraph down in the
11 addendum seems to be somewhat contradictory in the sense that
12 it says that it incorporates by reference our objections in
13 the November 17th letter but then, at the end of the
14 paragraph, says it doesn't think that any changes should be
15 made.  It's somewhat confusing.
16     This has to do with allegations of a prior case in
17 which the Probation Department had reported that he had been
18 convicted of a number of crimes that he wasn't convicted of;
19 in fact, he was acquitted of them.  We pointed that out in our
20 objection letter.
21     MR. GOLDBERG:  I think defense counsel's objection
22 with respect to paragraph 97 was to clarify that the defendant
23 was not convicted of the conduct set forth in paragraph 97
24 and, if I recall correctly, there was nothing in paragraph 97
25 that indicated that he had in fact been convicted.

1    I'm reviewing it again now just to make sure I'm
2 right.  I think I am.  It falls under the category of arrests
3 and there was no points assessed for it.
4    So I think what counsel just wants to make clear on
5 the record is that the defendant was not convicted for the
6 conduct in paragraph 97 and I think it's plain from the
7 description that it's not saying that he was.
8    MR. MITCHELL: If that is the reading the government
9 gives it, and it's not unreasonable I suppose, it shouldn't be
10 there then.  I mean, allegations that actually went to trial
11 and the defendant was acquitted of really have no place in the
12 PSR.
13    MR. GOLDBERG:  The PSR always includes arrests
14 whether they result in a conviction or not.
15    MR. MITCHELL:  As you can see, there is substantial
16 detail there about events that he actually went to trial for
17 and was found not guilty.  Certainly at the very least it
18 should indicate that.
19    MR. GOLDBERG:  No objection to that.
20    THE COURT:  I would add a sentence which indicates
21 that this is your agreement that the defendant was -- what was
22 he tried for?
23    MR. MITCHELL:  He was tried for burglary, your
24 Honor.  I think he was tried for -- I don't have the
25 indictment in front of me so I can't give you the specifics.

1        THE COURT:  He was acquitted?
2        MR. MITCHELL:  He was. .
3        THE COURT:  I'm taking in and out 97.  I'm not
4   leaving it in.  If he was acquited it's a nullity as far as
5   I'm concerned.  I'm not going to put in accusations that were
6   before a court and for which he was acquitted.
7        MR. GOLDBERG:  I would just indicate the Probation
8   Department indicates in their addendum that he was, quote,
9   convicted upon verdict after bench trial, according to the
10  certificate of disposition, the third paragraph of the
11  addendum.
12       MR. MITCHELL:  He was convicted of a misdemeanor
13  that doesn't include the factual allegations that are
14  contained in 97.
15       THE COURT:  I'm striking 97.
16       THE DEFENDANT:  Thank you, your Honor.
17       THE COURT:  Next.
18       MR. MITCHELL:  Your Honor, we'll stand on the
19  objections set forth in the letter.
20       THE COURT:  Anything else from you on that?
21       MR. GOLDBERG:  No, your Honor.
22       THE COURT:  All right, your objections are
23  overruled.  The one deletion of the report is accepted by the
24  court.  Okay.
25       Inasmuch as the statutory maximum is one half the

11

minimum under the guideline, basically -- isn't that right, 180 months as opposed to 360?

MR. MITCHELL:  Yes.

THE COURT:  The court would simply like to hear from you, Mr. Mitchell, before I sentence the defendant regarding anything you might have to say about what the sentence ought to be under 3553(a) and the case law.

MR. MITCHELL:  Well your Honor, as the plea agreement provides, we have agreed with the government that the maximum sentence would be imposed.  This sentence is the product of substantial plea negotiations.

As the court knows, the maximum sentence the defendant was exposed to was life imprisonment without parole. As a product of these substantial negotiations, the government and defense counsel ultimately reached the conclusion that the case was best resolved through this plea.

It's been agreed between the government and the defense that the sentence would be the maximum statutory sentence that is permissible, which is 15 years.

THE COURT:  All right.  Thank you.

Do you have anything to say?

MR. GOLDBERG:  No, your Honor.

THE COURT:  Mr. Mancuso, before sentence, do you have anything you would like to say to the court?

THE DEFENDANT:  No, nothing, your Honor.

Burton H. Sulzer - OCR, CM, CRR

12

1  THE COURT: All right. Very well.

2  This case places the court in the unusual posture of
3  imposing a sentence which is far lower than that the court
4  would have imposed had this case gone to trial and had the
5  defendant been found guilty by a jury of the most serious
6  count.

7  Obviously, the defendant's actions which brought us
8  here have had a great unfortunate effect on people who are
9  also innocent victims of the defendant's behavior.

10  I must admit, I really, after all this time in
11  dealing with these cases, don't understand how human behavior
12  can be so contorted to result in this kind of terrible
13  tragedy. It all seems to me like so much harm over so little
14  benefit and it's really hard to believe that we're sitting
15  here in the 21st century in modern America when I look at the
16  facts of this case.

17  That having been said, I assure you that the maximum
18  sentence under the statute is well below that which would be
19  justified under 3553(a) and its factors. It is clearly far
20  below that which would have been available under the
21  sentencing guidelines, but the court also understands the
22  other considerations which were at play in reaching this
23  disposition.

24  I only mention all of this because we heard an
25  extremely articulate exposition by Miss Pizzolo here about the

Burton H. Sulzer - OCR, CM, CRR

13

consequences of this kind of terrible tragedy and we can't forget about the people who are also victimized by this behavior. All right.

Are you ready to be sentenced, sir?

THE DEFENDANT: Yes, your Honor.

THE COURT: Okay. I sentence you as follows: On count one, 10 years in custody, the statutory minimum, three years of supervised release. On count 3, 5 years custody, the statutory minimum, to run ask consecutively to count one, and three years of supervised release, which will run concurrently.

MR. GOLDBERG: I think your Honor meant "maximum" as to both of those sentences.

THE COURT: Maximum statutory sentence for both. Count one 10 years; count three, 5 years to run consecutively to count one.

Special conditions for supervised release include that you shall not possess a firearm, ammunition or destructive device; you shall not associate in-person, through mail, electronic mail, or telephone with any individual with an affiliation to any organized crime groups, gangs or other criminal enterprise; nor shall you frequent any establishment or other locale where these groups may meet pursuant but not limited to a prohibition list which will be provided to you by the Probation Department.

14

1  I am imposing a search condition that you shall
2  submit your person, residence, place of business, vehicle, or
3  any other premises under your control to a search on the basis
4  of the probation officer has a reasonable belief that
5  contraband or evidence of a violation of the conditions of the
6  release may be found.  The search must be conducted in a
7  reasonable manner and at a reasonable time.  Your failure to
8  submit to a search may be grounds for revocation.  You shall
9  inform any other resident that the premises may be subject to
10 search pursuant to this condition.
11         There is a $200 special assessment which is
12 mandatory.  I'm not imposing a fine as you do not appear to
13 have the ability to pay a fine.
14         You have the right to appeal your sentence to the
15 United States Court of Appeals for the Second Circuit if you
16 believe the court has not properly followed the law in
17 sentencing you.
18         I note that you agreed not to appeal or otherwise
19 challenge the sentence that I impose if it is 15 years or
20 below and therefore your right to appeal is extremely limited.
21         You should discuss that with your attorney at once
22 in any event.  Are there open counts in the underlying
23 indictment?
24         MR. GOLDBERG:  There is.  The government moves to
25 dismiss indictment S-9, specifically counts 3 through 5 as to

15

1   the defendant.
2          THE COURT: Motion is granted. Is there anything
3   else from the government?
4          MR. GOLDBERG: No, your Honor. I think your Honor
5   indicated adequately the appeal waiver. I think it's broader
6   than what you indicated, but he'll discuss that with his
7   counsel.
8          THE COURT: Whatever the appeal waiver is in the --
9   would you like me to read it?
10         MR. MITCHELL: We agree that what's set forth in
11  the plea agreement is the terms of the waiver.
12         THE COURT: Thank you.
13         MR. GOLDBERG: Thank you, your Honor.
14         THE COURT: All right. Anything else from you,
15  Mr. Mitchell?
16         MR. MITCHELL: Yes, sir. We would ask the court to
17  recommend to the Bureau of Prisons that the defendant be be
18  incarcerated at the facility in Otisville, New York. I spoke
19  with government counsel and they have no objection.
20         THE COURT: All right. Usually this is a standard
21  thing to do. It's important for people who are in jail to
22  have the ability to have contact with their families. I'm
23  really reluctant to do it in this case because basically what
24  this defendant did is make it impossible for the victim's
25  family to have any contact with the victim, but in spite of

Burton H. Sulzer - OCR, CM, CRR

1   all that, I'm going to recommend it to the Bureau of Prisons,
2   although I cannot require it.
3              MR. MITCHELL:   I understand.
4              THE COURT:   But I want you to understand that when
5   you kill somebody and you deprive a family of their loved one,
6   there is something to be said for depriving you of the same
7   thing that you deprived them of as part of your punishment,
8   and you should think about that.  It's just a terrible
9   tragedy.
10             Anything else?
11             MR. MITCHELL:   No, sir.
12             THE COURT:   All right.  Very well.  Thank you very
13  much everyone.  Have a good day.
14             MR. MITCHELL:   Thank you, Judge.
15                  *********