

THE LAW OFFICES OF
# Richman Hill & Associates PLLC

2027 Williamsbridge Road, Bronx, NY 10461
718.892.8588 | fax: 718.518.0674

Stacey Richman, Esq.
srichmanlaw@msn.com

Renée C. Hill, Esq.
rhillesq@msn.com

June 13, 2023

Honorable Nicholas G. Garaufis
United States District Court
225 Cadman Plaza East
Brooklyn, NY 11201

        RE: United States v. Michael Mancuso
        Docket No. 05-CR-060 (NGG)
        <u>Defense Post Hearing Brief</u>

Your Honor:

  This submission follows our hearing of May 16, 2023. The hearing was ordered subsequent to a proposed resolution of this matter on February 16, 2023, which was rejected by the Court. The proposed resolution of February 16, 2023, involved a plea to an amended charge of standard condition No. 9, "the defendant shall not associate with any persons engaged in criminal activity and shall not associate with any person convicted of a felony, unless granted permission by the probation department." The initial charge of special condition No. 2, "the defendant shall not associate in person, through mail, electronic mail or telephone with any individual with an affiliation to any organized crime groups, gangs or any other criminal enterprise; nor shall the defendant frequent any establishment or other locale where these groups may meet pursuant, but not limited to, a prohibition list provided by the probation department," had, at that juncture, been withdrawn.

  The change was reflected in the Supplemental Probation report of November 14, 2022. The Court was incensed by the alteration of the report and the proposed plea to the standard condition as opposed to the special condition. The Court expressed its concern with the sanctity of the Court and that it was the Court who imposed the conditions, and the appropriate resolve was in the discretion of the Court. See, Minutes, February 16, 2023.

  Please note that Mr. Mancuso from the outset sought to take responsibility for his actual violation however, the manner in which the violation was drawn was to the defense inappropriate and would have served an open warrant which, if true, would have condemned the defendant for any host of Government suppositions or assignations.

  The Court specifically noted that it did not blame the defense but wanted a fulsome airing of what was to serve as the basis of the proposed violations. See, Minutes, February 16, 2023,

1

page 7. The Venn Diagram of contacts with persons alleged associated to organized crime in the eyes of the Government (Special Condition No. 2) are subset to Standard Condition No. 9, as the individuals proffered by the Government in this matter as each had felony convictions.

The defense did not debate there were contacts to certain persons. The Government however, was incorrect about the contacts with several people.[1] This alteration was also part of the proposed resolution of February 16, 2023. That resolution excised certain people initially proposed in the initial violation.

Context

The next topic revolves around the purposes for which the Conditions are issued. The conditions conceptually are to serve a purpose. That purpose is in essence that a supervisee, in his graduation from incarceration to the community is still under sentence and the Government retains a substantial interest in ensuring that its rehabilitative goal is not frustrated and that the public is protected from further criminal acts of the [supervisee]. See, Birzon v. King, 469 F.2d. 1241 at 1243 (2d Cir. 1972). As long as there is a reasonable nexus between the special condition of release and the crime for which the individual was convicted, a [supervisee] may have his actions reasonably restricted in order to prevent his future criminality, and that includes depriving a parolee of his freedom of association. See, e.g. Malone v. United States, 502 F.2d 554, 556-57 (9th Cir. 1974), cert. denied 419 U.S. 1124, 95 S.Ct. 809, 42 L.Ed.2d 824 (1975); Birzon v. King, 469 F.2d at 1243; Hyser v. Reed, 318 F2d 225, 239 (D.C. Cir.) cert. denied, 375 U.S. 957, 84 S.Ct. 447, 11 L.Ed.2d 316 (1963).

The conditions imposed are not for abuse by the Government or the defendant. The Court has a public service interest and justice interest in resolving the charges put forth by the Government. See, Minutes, February 16, 2023, page 7.

Herein, as was demonstrated through the hearing, association with Nick Valenti, who had a prior felony conviction, was with regard to Mr. Valenti's business. Whilst the initial reportage by the Government involved alleged bid rigging; through cross examination it was revealed that the scaffolding deal involving Mr. Valenti was entirely legitimate and that there had been an error in proposed pricing. There was no nefarious component save for that persons previously convicted and those with association to alleged organized crime as characterized by the Government, were trying to do a legitimate business deal. See, Tr. at pages 108, line11 through page 109 through page 112, line 5.

---

[1] The initial charge for example required an admission to contact to John Ragano. Through hearing testimony it was confirmed that Mr. Mancuso and John Ragano never met or had anything to do with one another. Hearing Transcript ("TR.") page 133, lines 14-19.

The portion of the condition "You must not communicate or interact with someone you know is engaged in criminal activity;" is a logical directive for it is our concern to correct individuals and ensure they should not again fall afoul of the law. However, the second aspect of the condition needs a further safeguard. "the defendant shall not associate with any person convicted of a felony unless granted permission to do so by the probation officer." This is too broad. This condition fails to take into account that many people have been convicted of felonies and then rehabilitate and move on with their lives. One example, as noted above, is Nick Valenti, his legitimate business, and the legitimacy of the scaffolding proposals of May 2021, as verified by Special Agent Butler. Tr. page 108, line 11 through 21; page 110, lines 2 through 19; page 111, lines 11 through 20.

This condition fails to take into account the many people with whom an individual may work at a job and who have had convictions in their pasts; or the family members who may have convictions. We have become a society where there are many amongst us with felony convictions. Convicted persons are promised that when they serve their sentences they may be welcomed back into the fold of society restored and retake their places as contributing community members. This condition fails the basic promise of redemption and assumes that once a felon always a felon. The condition should have the criteria added that there should be no interaction with a person convicted of a felony for criminal purpose.

The defense recognizes that there is no such condition on the conditions as set for Mr. Mancuso and for which we are before the Court. However, it is part of argument, for the consideration of the Court.

Similarly, the Special Condition 2 conspiracy or membership in any group is oft in the eye of the beholder, so the Government's view may be expansive and an ever present danger to people who live in communities where the Government views neighbors, friends and relatives as related to verboten groupings. I was not counsel at the point of sentencing however the purpose of the condition again should be tailored to its goal "no association for criminal purposes."

The evidence in this matter is strikingly supportive of this concept of application. Mr. Mancuso clearly associated with Mr. Univo and Mr. Ricciardo. However, during this time period unbeknownst to Mr. Mancuso, whose association resulted solely from his relationship with his girlfriend Laura Keller, Mr. Univo and Mr. Ricciardo were indicted for their activities. With all of the surveillance, with the wide view the Government oft has of conspiracy, Mr. Mancuso was not indicted. He was not accused! Thus, demonstrating he was not flouting the direction of the Court; he was not engaging in criminality. This is a unique moment to assess the purpose and impact of the conditions.

The Court noted that it was aware that Mr. Mancuso was not accused in the Uvino/Ricciardo indictment and that it viewed this aspect as an aside; that counsel should move

THE LAW OFFICES OF
## Richman Hill & Associates PLLC

on as the point was made. See, Tr. page 124, lines 8 through page 126, line 8. Yet is this not the very crux of the Court's concern? Doesn't the defendant have to also trust in the sanctity of the Court; and seek his safety from the Government in the confines of his supervisee leash?

From Mr. Mancuso's voluntary surrender on these violations, I continued to ask of the Government is he going to be indicted? The answer was a resounding no on the date of his arraignment on these violations on March 11, 2022, and it has remained a resounding no through today. There has been more than another year of supervision with no indictment and no further criminal charges.

The violation was lodged two days before the expiration of Mr. Mancuso's supervised release. Mr. Mancuso sought to take responsibility for his contacts, but the contacts need be in context for the eventual assessment of the Court in its resolution of this matter.

There were in addition multiple contacts with family members and an individual Mr. Mancuso has known since that individual was a child. There were permissions granted in the understanding of Mr. Mancuso. Mr. Mancuso was never provided any prohibition list as indicated in Special Condition 2; but sought to notify Probation Officer Michael Nicholson of those contacts he perceived required by the Court's directives.

The Evidence:

The People called two witnesses: Parole Officer Michael Nicholson and Special Agent Jarryd Butler.

Parole Officer Nicholson inherited Mr. Mancuso from U.S. Probation Officer Michael Weisner about halfway through Mr. Mancuso's supervised release. Tr., pages 4, lines 25 through page 5, line 6. Parole Officer Nicholson provides insight into his manner of communication with Mr. Mancuso. Tr. page 9, line 18 through page 10, line 2; page 14, lines 6 through 14.

As verified by Parole Officer Nicholson and confirmed by the Government, Mr. Mancuso would tell Officer Nicholson if he ran into someone verbally and at times those dates were not detailed in the monthly reports. Nicholson perceived that the monthly reports were to the best of his recollection and that their manners of communication were frequent via call, facetime, text in addition to in person. (Tr., page 9, line 18 through page 10, line 12; page 16, line 4 through page 18, line 13).

"Q. Just to be clear Officer Nicholson, if the defendant verbally told you about a contact that he wasn't supposed to have, was he supposed to report that on the written report as well? A. Yes. As generally the requirements. <u>But verbally notifying me would suffice</u>." Tr., 2023, page 10, lines 18-23; see also, page 12, line 25 through page 13 line 11.

4

THE LAW OFFICES OF
# Richman Hill & Associates PLLC

Mr. Mancuso would fill out reports on a monthly basis, as Officer Nicholson noted, to the best of his recollection. However, in the interim there were many contacts with Officer Nicholson during which Mr. Mancuso advised of contacts with persons he conceived he should alert his Probation Officer to, in order to remain in compliance.

The Government focused on the monthly reports and their chart derived from the monthly reports in their presentation. The failures to detail interfaces on the monthly reports are highlighted in the Government's presentation. See, GX 40, Testimony of SA Butler Tr., page 35, line 2 through page 37, line 8; page 126, lines 19-23 Government's Post Hearing Brief at i.e. page 7, paragraph 2.

However, the Government's summary chart is misleading, for, as noted by Probation Officer Nicholson, Mr. Mancuso often reported contacts to him in person, by phone, text or facetime. Officer Nicholson stated "<u>verbally notifying me would suffice</u>." See, Tr. page 10, lines 18-23. At no point did the Government interview Officer Nicholson with regard to all of Mr. Mancuso's additional reports:

"Q. And with regard to this compilation, you never sat and interviewed Mr. Nicholson for all of his individual, verbal, text, FaceTime contacts with Mr. Mancuso where he reported seeing people correct? A. Correct" Cross Examination of S.A. Butler at Tr. 126: 19-23; see also Voir Dire of S.A. Butler re GX 40 [the chart] Tr., page 36, line 5 through page 37, line 8.

<u>Permissions Granted:</u>

Officer Nicholson noted that at the outset of his taking over Mr. Mancuso's supervision he was introduced to Mr. Mancuso's significant other, Laura Keller. Mr. Mancuso was permitted to move in with Ms. Keller in the Eastern District. Tr., page 15, lines 8-14. Officer Nicholson and Ms. Keller spoke as Michael Uvino had lived in the lower apartment of her home and she wanted to let Officer Nicholson know Mr. Uvino was one of her longtime childhood friends. Tr., page 15, lines 15-22.

Officer Nicholson understood there would be contact with Uvino and that contacts with Uvino were frequent. Uvino was a person consistently reported to Probation both verbally and in the monthly reports. Tr. page 16, lines 4-24.

Officer Nicholson also recognized Mr. Mancuso knew Mr. Spirito since he was a small boy, and knew they had a long standing relationship. Tr. page 20, line 21 through Tr. page 21, line 8.

"Q: And you noted to Mr. Mancuso that as long as he reported whenever he would run into him or keep you abreast of that, as long as nobody was doing anything wrong, that was okay, correct?

5



## THE LAW OFFICES OF
## Richman Hill & Associates PLLC

A: As long as both of them were in compliance and their names ain't come up in criminal activity, yes.

Q: So in essence, you knew an you had approved that Mr. Mancuso and Mr. Spirito would, at times, interface?

A: That I was aware of, yes." Tr. page 20, line 25 through Tr., page 21, line 8.

In redirect, Officer Nicholson again noted that as long as your name or their name does not come up in anything, you can have your brief interactions. Tr. 26:12-17. Nicholson noted that he did not understand that there were extended conversations or family trips or anything of that nature. As an aside, there were no family trips.

Similarly, Mr. Mancuso advised Officer Nicholson that Mr. Aiello was a relative and that Mr. Mancuso would see him. Tr. page 21, lines 9-16.

P.O. Nicholson affirmed that Mr. Mancuso was very proactive in letting Probation know if he ran into somebody. Tr. page 21, lines 23 through Tr., page 22, line 2.

From the end of 2021 Officer Nicholson was aware the FBI was investigating Mr. Mancuso vis a vis violations of his supervised release. Throughout this period Mr. Mancuso continued to report as he had to Officer Nicholson. During the time period where Officer Nicholson understood that the Government wanted him to file a violation, Mr. Mancuso was permitted to travel to Hawaii, Florida and Texas. Tr. page 23, lines 2-25. This permission was granted after consultation with the Government. Id.

Mr. Mancuso reported a person's son had passed and that there was to be a wake and funeral in New Jersey. Permission was granted to attend this event assuming there would be persons with felony convictions at this event. Tr. page 24, line 8 through page 25, line 3.

Throughout, Mr. Mancuso was vocal in his concern not to offend his obligations. P.O. Nicholson noted he believed Mr. Mancuso was attendant to his responsibilities to the best of his ability. Tr. page 25, lines 4-11.

<u>Aspersions In Allegations Unjustified:</u>

In the initial violations and follow up letters the Government stated it had indication that Mr. Mancuso was involved in bid rigging on a scaffolding project. Through the illumination of the hearing, it was revealed that there was no nefarious attempt to rig any bid. Tr., page 108, lines 22 through Tr., page 111, line 25. S.A. Butler noted the legitimacy of Mr. Valenti's business and had investigated this proposed contract. Further S.A. Bulter believed that referenced individual in the discussion to be Michael Uvino.

Percentages: The telephone call with Michael Uvino on October 29, 2020, had to do with credit card processing company fees, not with any nefarious percentages as implied by the Government's submission. See, Government Post Hearing Brief at page 9, paragraph "e," and Tr. page 116, lines 4-17, GXs 51, 51-L, 51-T at 3:811. The transcript itself defines the reference was with regard to credit card processing services. See, GX51-T at page 2.

Transcript 58T apparently did not have relevance to Michael Mancuso as there was a confusion of Mikes and Michaels again as between Mancuso and Uvino. Tr. page 112, lines 6-17.

As to the Ragano conflict with his girlfriend improperly linked to Mr. Mancuso, S.A. Butler admits that their interpretation of calls was based on gossip and that their perception as to Mr. Mancuso as reflected in their reports was a mere assumption and that they could be completely wrong. Tr. page 135, line 19 through Tr. page 136, line 6.

### Allegations Justified But With Logical Explanation In Derogation Of The Letter Not The Purpose of The Conditions

There were repeated interfaces with Michael Uvino. As testified throughout the hearing he was the childhood friend of Laura Keller and spoke to her essentially every day. Tr. page 117, lines16-18. He was an extended family member to her. That relationship is core to Ms. Keller's history, and her relationship with Mr. Mancuso led to the relation between the gentlemen. As with United States v. Myers, 426 F.3d 117, 125 [2d Cir 2005] this interface came out of the historic bonds of Mr. Keller. But for, Ms. Keller's relationship to Uvino, Mr. Mancuso would have no interface with Uvino or Ricciardo. And whilst it is not the core issue of this violation, Uvino and Ricciardo were indicted, yet Mancuso was not. This is a positive contemplation for the purpose of the condition to protect the public from further wrongs by the defendant and to insure his rehabilitation. Id. at 126, n.9. The interfaces where Ms. Keller answers her phone and chides Mr. Uvino as "Binny, Binny, Binster" and then hands the phone to Mr. Mancuso are all innocuous calls.

Yes, there was contact. Yet that contact did not offend the aims of the conditions.

The Government argues that Mancuso took superficial (and deliberate) steps to appear compliant with the terms of his supervised release by selective reporting to Officer Nicholson some contacts and minimizing the nature of all reported contacts as incidental or accidental. Government Post Hearing Brief at 5.

The other explanation is that Mancuso became complacent in his perception of his actions without intent to offend the Court or his obligations to the Court. It was during the time

THE LAW OFFICES OF
# Richman Hill & Associates PLLC

period of the pandemic and Mr. Mancuso lived within the bubble of his significant other and her closest friend Mr. Uvino. Mr. Uvino begat Mr. Ricciardo.

As for the dates listed in the Government's submission:

b. September 2020 Telephone Calls with Michael Uvino specifically September 1, 2020 (GXs 41, 41-L, 41-T, Tr. page 121, lines 5-19) pertain to Ms. Keller's birthday; September 25,

2020 (GXs 42, 42-L, 42-T) again a call between Keller and Uvino where the phone is just handed to Mancuso.

The Government asserts that these contacts were not reported because they are not on the summary chart; yet we know that the chart is incomplete, for the Government did not interview P.O. Nicholson to inquire if these interfaces were reported. Notably the contacts were frequent as between Uvino and Mancuso. Frequent as well were the interfaces of Mancuso and Officer Nicholson and the more casual reportage of contacts therein.

c. There was a birthday dinner for Mr. Ricciardo at which Mr. Mancuso was present as were the significant others of each gentleman representing an occasion wherein matters of concern per the Government would not be discussed per S.A. Butler. Tr. Page 113, lines 14 – 25.

The Government is disingenuous in its assignation of a portion of the Ricciardo/Valenti call of October 8 2020, GX 45-T at 2:23-26. The reference to "that thing" which the Government refers to as nefarious in context are the potential construction work for which Mr. Valenti would follow leads. Tr. page 108, lines 11-21 and page 110, lines 2-19.

d. Dinner on October 24, 2020 dinners with significant others present were had and arranged by significant others and with significant others.

e. The telephone call with Uvino on October 29, 2020 referring to percentages has been discussed above as another innocuous call wherein Ms. Keller spoke to Mr. Uvino and then put Mr. Mancuso on the line. In context the discussion was to find the best credit card vendor. There was contact but the contact was not nefarious. The transcript itself at page 2, lines 1-46 specifically identifies the conversation as one about choosing a credit card processing guy. See, GX 51T.

f. The November 15, 2020 dinner as designated by the Government which was a birthday party for one of the wives; and commemorated with the photo in GX 52. Y

g. The April 1, 2021 call with Vincent Ricciardi is identified as an unreported contact however no inquiry was made by S.A. Butler of P.O. Nicholson. This call is about the romance

woes of Uvino and his depression after his girlfriend broke up with him. Ricciardo is concerned about Uvino's emotional distress.

h. The dinner of April 28, 2021 there was a dinner as captured by surveillance. GXs 54-55. Again, as discussed, present were gentlemen and their significant others. Tr. page 74, lines 3 through page 75, line 6. As indicated by S.A. Butler this would not be an event at which business assailed in the eyes of the Government would be discussed. Tr. page 113, lines 14- 25.

There was no photo surveillance apparently of the other persons to whom Ricciardo refers in the call of April 29, 2021, presented. These lines were of significant interest to the Court. Yet the reference is to John Ragano who S.A. Butler testified confirmed that Mr. Mancuso and John Ragano never met or had anything to do with one another. Hearing Transcript ("TR.") page 133, lines 14-19.

As to the Ragano conflict with his girlfriend improperly linked to Mr. Mancuso, S.A. Butler admits that their interpretation of calls was based on gossip and that their perception as to Mr. Mancuso as reflected in their reports was a mere assumption and that they could be completely wrong. Tr. 135: 19 -Tr. 136:6.

i. The May 12, 2021 meeting with Ricciardo at Real Eyes Optical; Ricciardo had an actual medical issue for which he saw a doctor at Real Eyes Optical. Medical records were provided confirming the appointments.

The Ricciardo references in his conversation the scaffolding project which did not come to fruition and which S.A. Butler testified to as a legitimate project. Tr., page 108, lines 22 through Tr., page 111, line 25. S.A.

j. The June 7, 2021 conversation in which Ricciardo is recorded bragging includes a reference to Mancuso as that "the guy probably in the eyeglass place" wherein Ricciardo claims a messenger role. The conversation revolves around Michael Uvino and his cousin Joey Russo. Tr. page 112, lines 6-16.

k. Interfaces with Spirito were repeatedly reported both in logs and in the various contacts with Officer Nicholson. As testified to by Nicholson association with Spirito was permitted. Tr. page 20, line 25 through Tr., page 21, line 8. In redirect, Officer Nicholson again noted that as long as your name or their name does not come up in anything, you can have your brief interactions. Tr. page 26, lines 12-17. Officer Nicholson was also supervising Spirito. Tr. page 17, lines 11-12. Subsequent to the Uvino/Ricciardo indictment Nicholson directed that Mancuso and Spirito meet with him at the same time at a pizzeria in the Bronx, for inquiry as to whether Mancuso perceived he would be named in the indictment. Tr. page 17, line 11 through page 18, line 24. Per Mancuso's own reportage and Probation's knowledge there were many interfaces with Spirito.

THE LAW OFFICES OF
# Richman Hill & Associates PLLC

Conclusion:

Mancuso sought to take responsibility for his contacts. Mancuso became complacent in his perception of his actions without intent to offend the Court or his obligations to the Court. It was during the time period of the pandemic and Mr. Mancuso lived essentially within the bubble of his significant other. With permission Mr. Mancuso moved in with his significant other in Long Island; through her he met her closest friend Mr. Uvino. Mr. Uvino begat Mr. Ricciardo. Mancuso reported to his Probation Officer his contacts through a variety of manners, including FaceTime, phone calls, text and in person. This reportage was sufficient to his supervising officer. As confirmed by the Government, Mancuso has not committed any crimes during his supervision.

Most respectfully,

Stacey Richman

cc: AUSA Michael Gibaldi
    AUSA James P. McDonald